UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM SARUKHANYAN,<br><br>           Plaintiff,<br><br>    v.<br><br>DOROTHEA BERRY, et al.,<br><br>           Defendants. | No.  1:24-cv-01091-JLT-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION<br><br>(ECF Nos. 18, 19) |

     Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

     Plaintiff's complaint in this action was filed on September 13, 2024.  (ECF No. 1.)

     On November 15, 2024, the Court screened the complaint, found that Plaintiff failed to state a cognizable claim for relief, and granted Plaintiff thirty days to file an amended complaint. (ECF No. 10.)

     Plaintiff filed a first amended complaint on January 30, 2025.  (ECF No. 15.)  On June 10, 2025, the Court screened the first amended complaint, found no cognizable claims for relief, and granted Plaintiff one final opportunity to amend the complaint.  (ECF No. 18.)

     Plaintiff failed to file an amended complaint or otherwise respond to the June 10, 2025 order.  Therefore, on July 22, 2025, the Court issued an order for Plaintiff to show cause why the

action should not be dismissed. (ECF No. 19.) Plaintiff has failed to respond to the order to show cause and the time to do so has now passed. Thus, the operative complaint before the Court is the second amended complaint, which as explained below, fails to state a cognizable claim for relief and dismissal of the action is warranted.

# I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///

**II.**

**SUMMARY OF ALLEGATIONS**

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

In 2011, prior to Plaintiff's incarceration, he suffered a gunshot wound to his face and had complex facial reconstruction surgery by Dr. Gravely. Metal places, wires, and screws were used to reconstruct Plaintiff's face and head. After the surgery, Plaintiff had no complaints of severe ear pain, infection, facial swelling, inability to breathe through nostrils, and continuous high pressure inside ears.

On June 24, 2019, while at Substance Abuse Treatment Facility and State Prison, Corcoran (SATF), dental surgeon, Dr. Germanos, informed Plaintiff that teeth numbers 10, 12, and 13 were small in size and needed to be removed. Dr. Germanos did not inform Plaintiff that these teeth were anchor points for the maxillary hardware which was placed during his facial reconstruction surgery.

Between June 24 to June 27, 2019, a three-member dental authorization review committee approved the removal undermining Dr. Gravely's expertise, who placed the hardware there for a purpose.

On June 27, 2019, Plaintiff was taken to SATF treatment center for the removal of teeth by the oral surgeon, Dr. Berry. Dr. Berry did not inform Plaintiff that these teeth were anchor points for the maxillary hardware which was placed during facial reconstruction. Plaintiff did not give consent to Dr. Germanos or Dr. Berry to remove the original implant out of his mouth. Both doctors refused to consult Dr. Gravely or his complex medical history.

Drs. Germans and Berry intentionally caused Plaintiff unnecessary and wanton infliction of pain and suffering. Their actions caused Plaintiff to suffer ear pain, facial swelling, sleepless nights, and chronic maxillary sinusitis resulting in obstruction of nostrils.

On June 30, 2019, Plaintiff submitted a medical request form stating his mouth was swollen after the removal of the three teeth and he was in severe pain.

On August 13, 2019, Plaintiff saw registered nurse Ratliff for his ear pain. After

1    examination, Ratliff noticed swelling and Plaintiff was prescribed an antibiotic by Dr. Kim R.

2    On September 11, 2019, Plaintiff returned to the medical clinic complaining of extreme

3    pain in his left ear radiating to the surrounding area.  Plaintiff was again prescribed antibiotics.

4    On June 5, 2020, Plaintiff returned to the clinic and saw physician assistant David Oberst

5    for left ear pain and swelling.  Oberst prescribed ear drops and Ibuprofen.

6    On June 7, 2020, Plaintiff returned to the clinic complaining that the ear drops were

7    causing more pain and ringing in his left ear.  Plaintiff requested to see an ear-nose-and throat,

8    (ENT) specialist which was denied by Dr. Davydov who prescribed antibiotics.

9    On June 23, 2020, Plaintiff again saw Oberst for right ear pain and swelling.  Plaintiff

10   requested to see an ENT for the ongoing ear pain and swelling.  Plaintiff stated the pain was

11   increasing and radiating around the ear.  Oberst denied Plaintiff's request and again prescribed ear

12   drops.

13   On June 26, 2020, Plaintiff again returned to the clinic complaining that the ear drops

14   were causing more pain and asked for an ENT consultation.  Dr. Davydov denied Plaintiff's

15   request and prescribed different ear drops.

16   On July 7, 2020, Plaintiff submitted a sick call slip informing medical staff that his left ear

17   pain had returned, and the prescribed ear drops and antibiotics were not resolving the root cause

18   of his pain.

19   On July 14, 2020, Plaintiff again saw Dr. Davydov for left ear pain who prescribed ear

20   drops, despite Plaintiff informing him ear drops were not effective.

21   On September 6, 2020, Plaintiff complained of extreme pain behind his left ear which was

22   hindering his daily activities due to loss of balance.  Plaintiff was simply advised to continue

23   using Ibuprofen.  Plaintiff submitted an inmate appeal requesting face to face ENT consultation

24   for repetitive ear pain and swelling for over a year.

25   On November 4, 2020, Plaintiff received a response to his inmate appeal which falsely

26   stated that the ear drops showed improvement and the ENT request was denied.

27   On November 23, 2020, Plaintiff filed an appeal requesting a face-to-face ENT

28   consultation.

1       On January 8, 2021, Plaintiff saw Dr. Scharffenberg for reoccurring ear pain and
2  requested to see an ENT.  Dr. Scharffenberg prescribed antibiotics and denied the ENT referral.
3       On February 25, 2021, Plaintiff received the denial of his appeal to see an ENT.  The
4  actions in denying Plaintiff's request to see an ENT by Edwards and Gates demonstrates careless
5  disregard to Plaintiff's serious medical needs.  The appeals coordinators were informed about
6  reoccurring ear swelling, pain, and infection, and that Plaintiff's condition was worsening due to
7  the pain spreading around the ear.  They were also informed that the current treatment with ear
8  drops and antibiotics were ineffective and still denied the pleas by falsely stating that ear drops
9  showed improvement.
10      In March and April 2021, Plaintiff discovered that in addition to the three teeth being
11 removed, the maxillary hardware was also removed.
12      On April 13, 2021, Plaintiff again complained of increasing ear pain, stating his condition
13 started on June 27, 2019, with the removal of maxillary hardware.  Plaintiff was advised to use
14 Ibuprofen.
15      On April 21, 2021, Plaintiff again complained that the ear pain continued and it felt like
16 there was liquid inside his ears.
17      Oberst, Dr. Davydov, and Dr. Scharffenberg continued ineffectively treating Plaintiff with
18 ear drops, antibiotics, and Ibuprofen, despite his condition worsening.  Their failure to refer
19 Plaintiff to see a specialist face to face for reoccurring ear pain, swelling, and infection was
20 medically unacceptable under the circumstances.  The ear and swelling was a sufficiently obvious
21 risk that a reasonable physician would have noticed.  Their failure to refer in order to save money
22 led to further significant injury causing chronic sinusitis and inability to breathe through nostrils.
23      On September 8, 2021, Plaintiff again submitted a medical request form complaining of
24 ear pain and pressure.
25      On November 7, 2022, Plaintiff went "man down" due to extreme pain and numbness on
26 the left side of his face.  Plaintiff informed medical staff of pain and he was taken to Adventist
27 Health Hospital.  A CT scan of Plaintiff's sinuses was taken which found "mucosal thickening of
28 left sinus and sinus wall partially absent."

1     On November 9, 2022, Plaintiff was taken to the triage and treatment area because of
2  extreme pain on the left side of his face.  On this same date, Plaintiff submitted an "urgent"
3  appeal for pain on his face after removal of maxillary implant from his mouth.  Plaintiff requested
4  the metal plate to be placed back to restore normal functioning of sinuses.
5     On November 10, 2022, Plaintiff again saw Oberst who prescribed antibiotics and denied
6  ENT referral, despite Plaintiff's medical condition.  CDCR is refusing to spend money to provide
7  adequate and much needed health care.
8     On January 23, 2023, Plaintiff informed SATF medical staff via medical request form that
9  was still suffering severe facial and ear pain.  On this same date, Plaintiff received a response,
10 stating: "Chronic pain and inflammation of face noted and your health care does not meet urgent
11 criteria."  Nothing is mentioned about the removal of maxillary hardware that Plaintiff addressed
12 in his request.
13    On February 11, 2023, Plaintiff visited an ENT who prescribed antibiotics and nasal
14 spray.
15    On March 30, 2023, Plaintiff revisited the ENT for follow-up who placed a request for CT
16 scan of sinuses due to the continued symptoms after maximal dose of antibiotics.
17    On May 5, 2023, Plaintiff is finally taken to Adventist Health Hospital for a second time
18 for CT scan.
19    On May 16, 2023, Plaintiff received his inmate appeal response, stating: "SATF medical
20 staff are promptly addressing your medical concerns.  The issue of facial surgery is a duplicate
21 and was addressed in 602 Tracking #22001604."  Barerjee is refusing to address the removal of
22 maxillary hardware and concealed the unauthorized removal with false statement.
23    On May 17, 2023, Plaintiff saw Dr. Scharffenberg who assured that the CT scan images
24 taken on May 5, 2023 would be sent to the ENT for examination.
25    On July 17, 2023, Plaintiff visited the ENT to discuss CT scan results, but the doctor
26 stated the CT images were not sent and she could not discuss anything.  Plaintiff believes the
27 failure to send the CT images was a deliberate delay tactic.
28    On August 25, 2023, Plaintiff saw Dr. Scharffenberg who blamed the delay on the CDCR

1  system, even though he can make the delivery and appointment priority.

2  On October 18, 2023, Plaintiff met with Chief Medical Executive (CEO), Dr. Ugwueze
3  and explained his serious medical condition. Plaintiff requested to see Dr. Gravely, his
4  reconstruction surgery for consultation but the request was denied.

5  On October 23, 2023, Plaintiff is finally able to discuss the CT images with ENT, Dr.
6  Pieper. The ENT diagnosis was left maxillary sinusitis and refused to comment about the
7  maxillary hardware that was removed from Plaintiff's mouth. Dr. Pieper offered to enter through
8  Plaintiff's nostrils and make a hole on the sinus cavity. Dr. Pieper also placed referral for the
9  Plaintiff to see Dr. Gravely, reconstruction surgeon.

10  On November 9, 2023, Plaintiff meets supervisory dentist, Dr. Edwards and requests to
11  see Dr. Gravely. Dr. Edwards denies the request stating, "it will cost a lot of money to transport
12  the Plaintiff to Pasadena."

13  Plaintiff's injuries have been knowingly allowed to worsen to a life-threatening condition.
14  Defendants Barerjee, Gates, Edwards, and Ugwueze refused to restore Plaintiff's sinus cavity to
15  its original state before June 27, 2019. Their failure and denial to provide meaningful and
16  effective care to save money has caused Plaintiff unnecessary pain and risk of dying.

17  Dr. Edwards and Dr. Ugwueze refused to restore Plaintiff's sinus cavity to its original
18  state before June 27, 2019. Instead, they recommended less expensive and easier treatment to
19  reduce the symptoms without curing the root cause of the medical problem.

20  On November 30, 2023, Plaintiff visits Dr. Thompson for tooth filling procedure.

21  On December 28, 2023, Plaintiff returns to Dr. Thompson for inability to breathe through
22  his right nostril. Plaintiff informed that his right nostril felt "stuffy" after the tooth filling
23  procedure. Plaintiff wants to know if the extended drilling and grinding of the tooth during the
24  procedure damaged his sinus cavity lining.

25  Dr. Thompson explained the difficulty breathing was possibly coincidental due to chronic
26  sinusitis.

27  On January 10, 2024, Plaintiff was seen by physician assistant, Mbadugha for inability to
28  breathe through his right nostril. Mbadugha stated he cannot do anything because his boss dr.

7

1  Ugwueze is the one who makes the decision.  Mbadugha refused to treat Plaintiff.

2        On January 15, 2024, Plaintiff submitted another inmate appeal for the inability to breath.

3        On April 23, 2024, Plaintiff saw Dr. Ugwueze and informed him that his condition was
4  consistently getting worse.  Dr. Ugwueze denied help to Plaintiff.

5        On May 3, 2024, Plaintiff sees nurse practitioner Hunt for inability to breathe through his
6  right nostril.  Plaintiff also requested a second opinion ENT consultation.

7        In late June 2024, Plaintiff requested the dental record review for dental extraction
8  consent forms.  Upon review of the dental records, Plaintiff discovered that consent for extraction
9  document signed on June 27, 2019, had been deceitfully altered.  Sometime in mid-July 2024,
10 Plaintiff filed a second inmate appeal stating that somebody altered a state legal document by
11 adding extra words without Plaintiff's knowledge.

12       On July 11, 2024, Plaintiff saw a nurse for discomfort due to obstructed nostrils.

13       On August 15, 2024, after more than three months of waiting for a second opinion from
14 an ENT specialist, Plaintiff's appointment was cancelled by SATF without Plaintiff's consent.
15 On this same date, Plaintiff saw nurse Hunt for progressive hearing loss.

16       In early September 2024, Plaintiff received medical progress notes for May 3 and August
17 5, 2024, visits with Hunt.  Plaintiff discovered that Hunt falsified Plaintiff's conversations during
18 his visits.  Hunt stated that Plaintiff's medical condition was the same, deliberately hiding the
19 worsening symptoms.

20       On October 25, 2024, Plaintiff went to the clinic for a doctor visit.  However, upon seeing
21 Hurt, Plaintiff requested to see another doctor.  That same day, Hurt retaliated against Plaintiff by
22 falsely stating in the medical records that he was argumentative and uncooperative with the staff.
23 Plaintiff filed a health care grievance against Hurt for retaliation.

### III.

### DISCUSSION

**A.   Deliberate Indifference to Serious Medical Condition**

Plaintiff complains of medical conditions stemming from 2019 to 2024-approximatley 5 years.

  Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs. A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. Estelle, 429 U.S. at 104-05.

  If, however, the official failed to recognize a risk to the plaintiff—that is, the official "should have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. Sandoval v. Cnty. of San Diego, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. Estelle, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016).

  Neither will an "inadvertent failure to provide medical care" sustain a claim, Estelle, 429 U.S. at 105, or even gross negligence, Lemire v. California Dep't of Corr. & Rehab., 726 F.3d

1062, 1082 (9th Cir. 2013).  Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012).  A delay in treatment, without more, is likewise insufficient to state a claim. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  It is only when an official both recognizes and disregards a risk of substantial harm that a claim for deliberate indifference exists. Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).  A plaintiff must also demonstrate harm from the official's conduct. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  And the defendant's actions must have been both an actual and proximate cause of this harm. Lemire, 726 F.3d at 1074.

       Here, Plaintiff's allegations span over a period of approximately 5 years-from June 2019 to August 2024.  Plaintiff initially contends that he did not consent to the removal of his original implant by Doctors Germanos and Berry; however, Plaintiff fails to demonstrate that the implant removal was "medically unacceptable under the circumstances" and that Defendants chose it "in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Toguchi, 391 F.3d at 1058.  It is clear that Plaintiff consented to the removal of teeth numbers 10, 12, and 13.  Thus, this is not a situation where Plaintiff withheld consent and medical professional nonetheless forced him to undergo treatment despite Plaintiff's objections.  Plaintiff, at most, disputes the scope of his consent.  Stated differently, Plaintiff disputes the method of treatment, but as stated above, a prisoner's disagreement with a medical professional over the appropriate course of treatment does not demonstrate that the medical professional has acted with deliberate indifference to the Plaintiff's serious medical needs by following a particular course of treatment. That Plaintiff had a bad outcome following the surgical procedure in removing his original implant is not sufficient to show that Defendants were deliberately indifferent. See Cunningham v. UCSF Spine Center, No. C-13-1978 EMC (pr), 2013 WL 5539311, at *3 (N.D. Cal. Oct. 8, 2013) ("That a surgery has potential complications or cannot be performed with guaranteed perfect results does not mean that a doctor who performs the surgery does so with deliberate indifference, or even negligence."); Torrey v. Lovett, No. 2:12-cv-1457 JAM CKD P, 2013 WL 269043, at *2 (E.D. Cal. Jan. 23, 2013) (plaintiff's allegation that his

knee surgery was "botched" was "exactly the kind of negligence claim that is not cognizable under § 1983"). Further, Plaintiff claims that doctors simply provided antibiotics, ear drops, and/or Ibuprofen; however, Plaintiff fails to demonstrate that these doctors purposely ignored or failed to respond to Plaintiff's pain or medical needs. Toguchi, 391 F.3d at 1058. The claim that medical professional should have provided Plaintiff with additional or different treatment, is a classic example of a matter for medical judgment and does not impose liability under the Eighth Amendment. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir.1995) (quoting Estelle, 429 U.S. at 107).

Plaintiff further contends that he was repeatedly denied a referral to an ENT specialist. However, Plaintiff fails to set forth sufficient facts to demonstrate that such referral was necessary under the circumstances or that any need was obvious to any medical professional. Indeed, when Plaintiff saw an ENT specialist on August 12, 2021, the specialist noted there was nothing he could do. (ECF No. 1 at 11.) Plaintiff further acknowledges that he saw an ENT specialist again on February 11, 2023, and he was prescribed antibiotics and nasal spray, as was prescribed by prior medical professionals. (Id. at 12.)

With respect to Plaintiff's claim that Edwards and Gates denied his inmate grievances for referral to an ENT specialist, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates. See Jett, 439 F.3d at 1098 (prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help" (citations omitted)). Therefore, an individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it. Id. However, Plaintiff's allegations fail to state a claim for relief because he has failed to demonstrate that any medical professional acted with deliberate indifference to any constitutional violation such that they could have intervened.

Further, Plaintiff's complaint fails to state a claim based on allegations of a false medical report. The creation of false evidence, standing alone, is not actionable under § 1983. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison

11

record has not been recognized); Martin v. Pfeiffer, No. 1:22-CV-00889 AWI BAM PC, 2022 WL 4345686, at *8 (E.D. Cal. Sept. 19, 2022) (no cognizable claim for a false medical report), report and recommendation adopted, No. 1:22-CV-00889 AWI BAM PC, 2022 WL 17406535 (E.D. Cal. Dec. 2, 2022); Sanford v. Eaton, No. 1:20-CV-00792 BAM (PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021) (denying a claim alleging falsified medical report and statements made by Plaintiff), denying to adopt on other grounds, Sanford v. Eaton, No. 1:20-CV00792-JLT BAM(PC), 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022).

Lastly, Plaintiff's claim that he was denied medical treatment based on financial concerns, also fails to state a cognizable claim.  Plaintiff's conclusory that Defendants had a financial motive to deny adequate medical care in order to save the prison money, without more, simply "do[es] not allow the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679; Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (the court is not required to "accept as true allegations that are merely conclusory, require unwarranted deductions or unreasonable inferences." ) (internal quotations omitted), amended on other grounds, 275 F.3d 1187 (9th Cir.2001); see also Butler v. Kelso, Civil No. 11cv–2884 CAB (RBB), 2013 WL 1883233 at *9 (S.D. Cal. May 2, 2013) (the prisoner-plaintiff failed to state a claim for deliberate indifference because he did not provide sufficient factual allegations necessary for the court to accept his conclusion that defendants' medical decisions were based on the desire to save money). Moreover, Plaintiff's own allegations acknowledge that he was repeatedly examined and provided some form of treatment.  Although he may not have agreed with the treatment provided, a disagreement among an inmate and doctor as to what is appropriate treatment does not give rise to a claim for deliberate indifference.  Plaintiff references a single statement made by Dr. Edwards stating, "it will cost a lot of money to transport the Plaintiff to Pasadena."  However, this comment does not state or infer that Plaintiff was denied any and all treatment because of its cost.  Plaintiff has failed to provide sufficient factual allegations necessary to allow the Court to accept his ultimate conclusion that a financial strain on the prison led to the decision by multiple Defendants to deny him adequate medical treatment. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992); see also Sims v. Wexford Health Sources, 635 F. App'x 16, 20 (3d Cir. 2015) (summarily

affirming dismissal of Monell claims against prison medical contractor where plaintiff's "complaint stated that Wexford had an open practice, policy, or custom of deliberate indifference in order to save money" and "[h]is statement of facts merely repeated this"); Winslow v. Prison Health Services, 406 F. App'x 671, 674-75 (3d Cir. 2011) (allegation that plaintiff was harmed by "policies to save money" is conclusory); Haar v. CFG Health Servs., LLC, No. 22-7595, 2024 WL 4880349, at *6 (D.N.J. Nov. 25, 2024) (assertion that CFG has "a policy to provide inmates with as little medical care as possible ... to save money" is too speculative and conclusory to support a deliberate indifference claim). Accordingly, Plaintiff fails to state a cognizable claim for relief.

## V.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 22, 2025**

STANLEY A. BOONE
United States Magistrate Judge

13